23-12863. I assume that everybody here has some familiarity, but just for in case anybody in the audience is unaware, we work on a traffic light system. As long as the light is green, keep going. When you get to yellow, you have two minutes left. You should start wrapping up your thoughts. When you get to red, it's time to stop. Unless, of course, we still have questions and you should, of course, proceed to answer our questions. And with that, Ms. Daddario? Daddario. Okay. And I see that you do have some time for rebuttal, but please proceed. Thank you, Your Honor. Good afternoon. May it please the Court. I'm Alicia Daddario and I represent Donald Whatley. The Alabama Court of Criminal Appeals applied a legal standard to the Batson claim in this case that is fundamentally inconsistent with the United States Supreme Court's decisions in Batson, Snyder, and Miller-El, which is why relief should be granted even under the deferential standard of the AEDPA. I want to talk more about the State Court decision as well as some of the specific jurors, but first I just want to start with a little bit of background. After challenges for cause in this case, out of a panel of 71, there were 22 black veneer members. The prosecution struck 17. And I just want to pause on that for a moment. That is an unusually high number that this Court rarely sees. And in a count where the veneer was only 30 percent African American. So they struck 77 percent of the qualified black veneer members. But because the defense struck three black jurors, the prosecution actually struck 89 percent of the jurors they had the opportunity to strike. That pattern was not isolated to this case. Between 2006 and 2011, the same lead prosecutor in this case tried five cases that resulted in a death sentence. And in each case, she struck 70 to 80 percent of the qualified black veneer members. I believe there was a backs end challenge raised in some of those cases. Yes, Your Honor. There were no reversals in those cases. There was also no reversal here, but I don't think that means there was no discrimination. And that pattern of exclusion also follows a long history of discrimination by the Mobile County District Attorney's Office. Absolutely. So out of the panel of 71, so the prosecution would have struck 13 white jurors, including the last two, which were alternates. Yes. So that would have been using, sorry, 39 percent of their strikes on white jurors. Yes. Did that answer Your Honor's question? Yes, Your Honor. Okay, excellent. The Supreme Court has repeatedly recognized that racial discrimination in jury selection harms not just the accused, but the excluded jurors and the community as a whole. And that's because it undermines the legitimacy of the legal process. That's particularly true in a county like Mobile that is one-third African American. A black citizen of Mobile showing up for jury service would have good reason to believe that they were not going to be allowed to serve on a capital trial jury, where in case after case, 70 to 80 percent of qualified black veneer members are being struck. And they're likely going to believe that that prosecutor does not trust them to serve on jury and appropriately punish people convicted of violent crimes. And that is something that does serious damage to public confidence in the legal system. And that's why careful examination of strikes in this case was so critical. Here, because the prosecution used 17 strikes to remove 77 percent of the black jurors, the State Appellate Court found a strong prima facie case of discrimination and remanded it for a Batson hearing. Rather than meaningfully rebut that case, the prosecutor provided just a laundry list of extensive details about each struck juror. After they gave their reasons, the trial court made clear that those were their reasons and they were going to have to stand or fall on them. But many of the justifications given for the strikes of black jurors were not true or applied equally to white jurors who served. And when the defense pointed that out, rather than some of their justifications and asserted new ones. And as the Supreme Court said in Miller, L., these kind of changing reasons show the prosecutor is not being sincere in providing their true reasons for their strikes. The prosecutor was just trying to create a record that would allow the court to affirm. On appeal, rather than evaluate the extensive evidence, that the prosecution's reasons here were just pretexts for discrimination, as required by Batson, the Alabama Appellate Court inappropriately circumscribed their review in this case. They stated that as long as one reason given was sufficiently race neutral, that was all that they needed to look at, regardless of any other factors. And that is just Your position is that the ACCA had to independently consider each of the prosecution's proffered reasons for striking each juror and determine whether those were sufficient under Batson? I think they probably had to consider that. We're not contending they needed to write that in the opinion. But, yes, they did have to consider all of the evidence of discrimination in the record under Batson. Batson is designed to ferret out when the reasons being given are really just a smokescreen for discrimination. And that's why it's necessary to consider all of those circumstances. We're not arguing that the court criminal appeals decision was unreasonable because they just didn't mention certain facts. That is not our argument. Our argument is that they explicitly limited their analysis. It's based on what they did, they said and did, not based on what they didn't say. The state court explicitly based their holding on the erroneous belief that if one race neutral reason is given, that's sufficient. And I just want to quote this because I think it's so critical here. The court said it's well settled as long as one reason given by the prosecutor for a strike of a potential juror is sufficiently race neutral, a determination considering any other reason given need not be made. And then they continued, where a prosecutor gives a reason which may be pretext but also gives a valid additional ground for the strike, the race neutral reason will apply. And then they went on to apply that rule and consider only a single race neutral reason for most jurors. And that's just directly contrary to the United States Supreme Court's decision in Snyder. As Justice Alito explained in Snyder, where one reason has been shown to be pretextual, for example, because it was not supported by the record or desperately applied, then that strike can be upheld, only be upheld if at all, by showing the jury that the strike would have been made solely on the basis of that race neutral reason. And I think the facts of Snyder are illustrative here of the kind of analysis that the State Court failed to engage in. In Snyder, the prosecutor had given two reasons for striking a black juror, one that was based on a scheduling conflict and one that was based on demeanor. The Supreme Court found that the scheduling conflict was pretextual because it was not supported by the record, and it applied just as much to a white juror who served. So the question became, would the prosecutor have made the strike solely based on demeanor alone? And the Court found it significant that just as in this case, the trial court did not specifically credit any of the particular reasons given for the strike. And so there was no contemporaneous finding about the juror's demeanor. And under those circumstances, where there's already one pretextual reason, that second reason, demeanor alone, was not sufficient to support the strike. So even though that was a reason that could have been race neutral on a different record, the Court found that was insufficient and reversed. And I think that's the same analysis that the State Court failed to apply here. The State Court did not even cite to Snyder, despite the fact that it provided that controlling precedent in this situation. What about this? I'm going to read a longer portion of Snyder. In other circumstances, we recall that once it is shown that a discriminatory intent was a substantial or motivating factor in an action taken by a State actor, the burden shifts to the party defending the action to show that this factor was not determinative. We have not previously applied this rule in a Batson case, and we need not decide here whether that standard governs in this context. For present purposes, it is enough to recognize that a peremptory strike shown to have been motivated in substantial part by discriminatory intent could not be sustained based on any lesser showing by the prosecution. How do you think that stands for your argument? I think that that's precisely the portion of Snyder that we would rely on here, Your Honor. I think what the Court is saying there is that where there's been a pretextual reason found, then the prosecution has the burden, then, to show that they would have made the strike solely based on the race-neutral reason. And the Court does say that there actually could be a higher standard that would apply, and we're not deciding that. And so we are relying here only on Snyder and not later decisions where I think the Court did ultimately apply that higher standard. But we think we win under Snyder. But do you think that, given that, do you think that you could say that if the State showed a race-neutral reason that the Court agreed with, wouldn't that be enough? No, Your Honor. I don't think so. Not where there are other pretextual reasons given, as in Snyder. And as in Snyder, demeanor was not sufficient based, although it could have been on its own, but when there was a pretextual reason given, it wasn't. And I think the same is true here where we have several pretextual reasons being given for a strike. And then one reason that perhaps there's less evidence of pretext for, I think what Snyder stands for is that you have to look especially closely at that, and then you'd have to find that the strike would have been made just based on that reason, that none of the other factors had — if none of the other factors had come into play, they still would have made the strike. Do you have a case where you're saying that you have to — the district court has to explicitly say that versus has to explicitly do — versus has to do that? Do you see what I'm saying, the differences? I don't think that the Court had to explicitly say that. I think the problem is what they explicitly said here was the opposite, that they explicitly said they were applying a rule that once we find one race-neutral reason, we're not going to look at any of that other pretext. And I think that's the problem here. We're not arguing for a rule that they have to write all that down in every case. We're arguing for the fact that they here identified an incorrect legal standard, and that's the standard they applied in this case. And that's why it's contrary to and an unreasonable application of clearly established U.S. Supreme Court precedent. I want to make sure that you have time to get to, speaking only for myself, the juror that I find most — the strike most suspect, and that was Tina Powell-George. Can you talk about that strike for me, please? Absolutely. Yes, Your Honor. Thank you. So Tina Powell-George would have been a strong juror for the prosecution. She wrote on her questionnaire specifically that she believes in the death penalty, and she consistently said that she could impose it. She also said drug abusers should be punished to the full content of the law. And the prosecution gave two reasons for the strike of TPG. The first was that her grandfather was an applied to in more than half of the veneer, including three white jurors who served. And after the defense pointed that out, the prosecution abandoned this justification for their strikes. And I think that disparate treatment and abandonment are both really significant in this case. First, I think the Supreme Court precedent makes disparate treatment core to its analysis of discrimination because it helps to figure out, is there a causal relationship between the reason being given and the strike being exercised? And so when you have white jurors who serve that have the same thing applied to them, you know that that was not the thing that actually caused the strike of the black juror. I want to say, Your Honor, also the prosecution did go on to say that one of the reasons for striking TPG was that she believed that those who are continual users and abusers or sell to children are the, and there's some debate about whether the word only was used, only ones that should really be punished to the full extent of the law. That's correct, Your Honor. That was the second reason they gave for TPG. But she actually, that's just not supported by the record. She actually expressed very pro-prosecution views on this point. On her questionnaire, when she was asked her general feelings about alcohol and drug use, she wrote that drunkenness should be punished and drug abusers should be punished to the full content of the law. The defense was so concerned about these very pro-prosecution statements that they questioned her about them on individual voir dire. And she did say she was especially concerned about people who were continual users, people who sell to children, and people whose drug use endangers others. But she never said those were the only people that she thought should be punished. And if the prosecution was truly concerned that that was her view, they could have asked her some follow-up questions, but they did not. What about the fact that in the state's post-hearing briefing on the Batson issue before the trial court, the state explained that based upon this line of questioning and her demeanor, the state believes that she would need the defendant to be a continual or habitual offender in order to vote for death, or in her words, to be punished to the full extent of the law. In this case, the state would not be presenting evidence during the trial phase of the defendant being a continual user or selling any types of drugs to children. So I have two responses to that, Your Honor. So first, I think the demeanor assertion was only made after defense counsel had pointed out that what they were claiming she had said was not actually what she said in the record. So it was a sort of post-hoc justification, which in Millerell, the Supreme Court found reeks of afterthought. And it was not specifically credited by the trial court. So we don't have any kind of contemporaneous finding about her demeanor. But then I think the second point I would make is that even if she was primarily concerned about continual users and people whose drug use endangers others, that is exactly this case. Mr. Watley was a lifelong drug user who was accused of committing a crime. And he was a lifelong drug user whose drug use endangers others. So I think there would have been no reason for the prosecution to be concerned that TPG, who asserted she believed in the death penalty and wanted to punish drug users, would not have been willing to oppose the death penalty in this case. In fact, it probably would have been exactly the kind of case she would have imposed the death penalty. The State court upheld the strike solely based on the prosecution's assertions about TPG's drug use without ever examining the credibility of the prosecutor's reasons. And that's just an unreasonable deviation from Batson's three-step process. Under the analysis required by Snyder and Millerell, especially considering the other pretextual reason that was given for TPG, it's just not credible that the prosecution would have struck her solely based on her views about drug use. And that's particularly the case when Mr. Watley's case fits into exactly the kind of case she said she thought should be punished especially harshly. I mean, so I think the only reasonable conclusion here is that the strike of TPG was the product of racial discrimination. Well, you know, I find myself wondering, which to be fair I don't think we have an answer for, but even if you were illegally and unconstitutionally interested in striking black jurors, I can't see why the prosecution would have struck this one. Right? I mean, to my mind, she does appear to be pretty pro-prosecution in ways that probably would have aided the case. Do you guys have any information on the timing of the strike or anything that might have made a difference? I mean, I believe she was the 25th strike. I cannot, unfortunately, get into the mind of the prosecutor. And I think, you know, I do think racial discrimination is somewhat irrational. And so the prosecution, I think in this case, did not trust black jurors to serve and impose the death penalty and perhaps understood her responses through that lens. But I think the only reasonable conclusion here is that the strike is based on racial discrimination given exactly as Your Honor recognized. She appears to be a very strong juror for the State. Can you also discuss juror and OJ? Absolutely. I appreciate you all telling me which ones you're interested in. Okay. So black juror OJ I think also would have been a very strong juror for the death penalty. He wrote on his questionnaire, if a person is found guilty of a crime, then they should pay for it, and that he had no sympathy for drug abusers. He donated money to support the police department, and he previously served on a jury that returned a conviction in a robbery case. The prosecution gave three reasons for striking OJ. First, that he had a brother-in-law with a drug problem. As I mentioned, that was applied equally to white jurors who served and then was abandoned by the convicted of robbery. But the State did not strike white jurors who had family members or friends who had been convicted of serious crimes. For example, the State did not strike white alternate CP who had friends who had been convicted of robbery and murder. They also did not strike DS who had a sister charged with attempted murder or LF who had a friend in prison for theft. The third reason the prosecution gave for striking OJ was that he was very supportive of the death penalty, but that's not supported by the record. He consistently... We have a cold record transcript, so explain to me, I mean, you're not expecting a court reporter to write in parentheses, he hesitated. So explain to me how it's not supported by the record. Well, I think what the record does reflect is that he consistently said he supported the death penalty. He consistently said he could impose it. And he then, he did remain seated when asked for anyone opposed to the death penalty. And he wrote on his questionnaire in response to death penalty, if guilty, you should pay for the crime. He did, the prosecution points to the fact that he paused in responding to what was a very lengthy legalistic question about weighing the aggravators and mitigators. And he was asked if there was any particular reason that he paused, and he said no. And I think that the fact, the idea that the prosecution struck him solely based on that pause is not credible when you compare OJ to seated white juror SG. SG did stand up during voir dire when asked who was so opposed to the death penalty they could not follow the law. She expressed a lot of nervousness about imposing the death penalty, telling the judge she didn't need to be there. She said she could only impose death if there was an eyewitness or a videotape, neither of which are present in this case. She never said that she could follow the law. And so the State also did not strike white alternate KF, who wrote on her questionnaire that her faith was opposed to the death penalty, and allowed white juror CS to serve as an alternate, even though she said she would have to be really pushed towards death before she would impose it. And why would the prosecution need to be worried about SG and all that she expressed when, in this case, they had a confession, so they weren't going to have to be worried about her having to determine innocence? Well, I think there were real questions in this case about whether Mr. Wally would be convicted of capital murder or a lesser offense. There were questions about his mental state, his intoxication, and his mental illness. But even putting that aside, I think that they would have been concerned about SG because even during this questioning, the idea that a confession would be sufficient was suggested, and she did not pick up on that. She said an eyewitness or videotape repeatedly over and over and never said she could follow the law. And I think even if you could say maybe you shouldn't be so concerned about SG, I think you have at least as much reason to be concerned about SG as you do about OJ, where all we have in the record suggesting he would not be an excellent juror for the state is that he paused in responding to a three-part question about weighing aggravators and mitigators. And then he said, yes, he could do it. And I think when you compare those two jurors, it's just not credible that the strike of OJ was based on that pause rather than based on racial discrimination. And the state court upheld the strike solely based on the pause. They never considered the other two disparately applied reasons that were given for the strike of OJ. They never considered that he actually supported the death penalty or the white jurors who served who had reservations. And that's just an unreasonable deviation from Batson's three-step process. It's the only reasonable conclusion here was that the strike of OJ was based was the product of discrimination. And then I would just, if there are no questions, before I get to the questions about OJ, I'll really quickly touch on AP. And the only thing I'll focus just on, the fact that the prosecution asserted for AP that one of the reasons they struck her was that her child's father was on death row. That was simply false. Her child's father was not on death row, and she never said that. When the defense pointed that out, they just shifted to a new reason for the strike. But AP also said she was not in contact with her child's father, even before his legal troubles. So I see my time is up, so I'll just reserve the remainder of my time for rebuttal. We will have eight minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honor. Thank you. May it please the Court. Dylan Mauldin on behalf of the Commissioner. Appellate courts reverse on batching grounds only in extreme circumstances. And that is on direct appeal when ADPA does not apply, when there is no presumption of correctness of the fact findings, and the fact findings do not have to be reviewed for unreasonableness. And here, there is no unreasonable application of law, and there is no unreasonable determination of fact. Now, I'm going to start with unreasonable application of law, and then I want to discuss all the jurors that you've discussed with counsel on the other side. And on the unreasonable application of law, I know counsel now says that they're not saying the State Court's opinion was unreasonable because it didn't mention facts. I read the brief differently, so I just want to hit on a few quick points there. This Court has said, and King and Lee over and over again, it is not an unreasonable application of law not to mention specific facts. State courts aren't required to write opinions at all in order to receive ADPA deference. And the courts assume that State courts know and apply the law. And, you know, also in this case, the CCA made clear that it was viewing the credibility of the reasons that the prosecution gave. It wasn't just determining whether they were facially race neutral, or close to that effect. At the end of the analysis, it talks about how it's reviewing for clear error, the determinations below. So there's just no grounds on that basis for unreasonable application of law. Yes, we've said that they don't have to state all the reasons, but when the court explicitly says that it is not considering all the reasons, doesn't that change our analysis? So I have two points there. First, again, you don't presume that every single reason given in an opinion is the only reasons the State court had. And I think that's a pretty reasonable presumption here, because there were 17 jurors who were striked as part of roughly a brief that challenged or raised 30 different claims on direct appeal. And this is very record-heavy, especially Batson in general. It would be a lot of, very difficult to write an opinion addressing all the different ways. So under PI, you review, like, the reason for the decision, not the specific justification. And here the reason was there was no clear error to find that the strikes weren't discriminatory. My second answer, though, is even if the court was only looking at one reason, that's not an unreasonable application of clearly established law. Even under Snyder, the court in Snyder, it did not say, oh, no, one reason is not enough to strike a juror. In Davis v. Ayala's case, that Supreme Court case that the district court cited below, the court had reviewed two reasons, said we don't need to review the third. The two are enough to sustain the strike on its own. And there was, just to make clear, the fact that there were no explicit findings of whether these were determinative, that's not enough. You defer to implicit findings that the district court also had. In the worst case, that would be an implicit finding. And then also there's a footnote, I believe it's footnote seven, where the court explains, you know, we don't really accept that the grandfather is the reason for the strike of this particular juror, his alcoholism, because it applied desperately. I mean, the court showed that it was considering the other justifications. And then getting on to Snyder, the opposing counsel said that under Snyder, if a reasoning is pretextual, then that is essentially case over, basically. But that's not really what happened in Snyder. For one, in Snyder, that was not an AEDPA case, and AEDPA cases are much less persuasive. Non-AEDPA cases are much less persuasive because under AEDPA, you're not looking whether the state court opinions were correct, you know, just whether any fair-minded jurist could reach the same conclusion. And then also in Snyder, the reasons given there are much different from the reasons we have in this case. So the prosecution gave us a reason for striking the particular juror that the juror seemed nervous about some type of conflict that the trial would interfere with student teaching. But in that case, someone from the clerk called the student's dean and made sure that it wouldn't interfere, that he wouldn't be punished or set back by attending trial. But there were other jurors who were quite straight up and said, no, I have business. I really don't need to be at trial. And that juror was still struck. We don't have those type of strong comparisons that were present in Snyder. Is that kind of approach still viable after Flowers? Set aside whether it would have been viable before that. What about after Flowers? So I'm not sure Flowers changes, but again, under AEDPA, you have to show clearly established law. So in this case, I think that's beside the point. And it was at least viable in 2010 when this case was decided. Also, something I want to talk about. The state court discounted the history of violations in Mobile County because they occurred in the 80s and 90s under a former administration. Can you tell me who the DA was when Wattley was tried and when that person became DA and when Ms. Rich started working in the Mobile County District Attorney's Office? Do you have those facts? So I'm not sure when she started working in the DA's office. I believe she was not DA when she tried this case and became DA after. That's in the briefs. Or did she work under the previous DA, I guess is the question, right? Did she—essentially, was she trained as a prosecutor under DA who did have this record of potentially objectionable strikes? So I'm not sure the record reflects either way. But I will say that in like Millerell, for example, where it was a little bit kind of analogous to if they were the same, what happened there is you had an office who had a manual that instructed district attorneys to use their strikes in racially discouraged story manners. And here, I mean, that's just not the same thing. There's been about— No, nothing like that. Yeah, no, nothing. And I think that would be the closest analog. And again, there's, I think, a 13-year time difference or maybe 10-year time difference between the last pass and violation. But even if the court was wrong on that point, it still wouldn't have been the basis of the decision. That's not enough to lose at predeference, like under PI for a factual determination even to be— even if it's incorrect, the decision does not lose at predeference. So that's the basis of the decision. And the Supreme Court, and this Court has said many times, that just strike rates on the road or history of discrimination is not dispositive of whether any particular juror was struck on the grounds of race. Can you consider it as one of the factors?  Agree? Yes, I agree. And one other question. On page 18 of your brief, you quote language from the Alabama trial court's Batson decision that I don't think is in my copy of the order. As far as I can tell, the record you cite at volume 22, pages 83 through 84, which is volume 22C83-84, is an unsigned seven-page order that is found in the district court record at document 2-35. And that is the same document found in volume 22, pages 78 through 84, of the CD of records the state provided to the district court. And so the question is, what order are you quoting from in your brief? And if you don't know offhand, I would understand that, but maybe you could look into that and let us know. Yes, Your Honor, I believe that was a mistake and we regret the decision. That was not in the circuit court order that we cited. So what order are you quoting from in your brief? What order is it on? I'm not sure. I believe what this counsel says was a brief that we get filed or maybe a proposed order. I'm not sure exactly what we're citing on that point. And then I'd like to get into discussion about the unreasonable findings of fact. And a lot is made about, you know, mistakes that the prosecutor made in this case. But it's worth remembering that this passing hearing was held two years after the trial. And it's just not enough. We had roughly 700 pages of voir dire testimony, 10 pages of juror questionnaires for each one, and two years after the fact. And so the prosecutor was looking through their notes trying to figure out why they struck these jurors two years later. And most of them, or a lot of the mistakes at least, they're just not really indicative of discrimination. If you look at Juror 27 AP, for example, the prosecutor said that she struck that juror because her husband was on, or the father of her child was on death row for capital murder. Well, it turns out he had been tried and acquitted of capital murder, but he was in prison for armed robbery. And also, the father of her child was represented by the attorney from the defense counsel. That type of mistake just does not suggest discrimination because... Because, yes, the hearing happened after the fact. So they had time to actually look through the record and come up with their reasons. So these are really the best ones they could come up with versus what we're usually dealing with are objections on the fly. So to the extent that there are these mistakes, I mean, again, they have to... These are the reasons they're putting forward, but here we're not dealing with a situation where a mistake is due to simply not having enough time to do the research. Well, so I don't think it should cut against the prosecution that at the time of trial, no one thought there was a Batson violation. The defense attorney even testified and said, no, I would have raised it if I thought there was a Batson violation. And it especially shouldn't count against the prosecution when we're on habeas review and we're looking for extreme malfunctions of the judicial process. I have a question about the attorney saying that he would have raised it had there been a Batson violation. I'm not doubting the sincerity of that explanation at the time, but I think perhaps if I were the defense attorney and the state struck a juror like TPG, who it seems perhaps had said that she would maybe even give the death penalty to jurors, maybe that could be an over-reading of the transcript. But as I said, it sounds like it would have been a very favorable juror for the prosecution. So I can understand why a defense attorney might not have really honed in on trying to find a problem that would potentially get that juror back into the jury pool. Well, so I think if the defense counsel was really concerned about that juror, I mean, he could have struck him. It was the 25th strike by the prosecution. And again, we weren't there in the courtrooms. You had this juror who testifies what seems to be quite passionately about how drug abusers should be punished. And then the prosecution could fairly determine based on her demeanor, which is one of the most important factors when a prosecutor is discerning whether to strike someone, that, oh, she is more passionate about this and she's not mentioning passion for the death penalty. They could decide that maybe she's not the best juror. The prosecution is not required to take chances on certain jurors and it requires a lot of nuance, distinguishing between answers to determine whether to strike somebody. And then I'll also discuss OJ. So I'm sorry. I have a question about TPG. Yes. You've still got plenty of time. Yes. I'm not honestly sure how you get from this transcript to this juror would not be open to the death penalty here. The discussion of, for instance, the last question, Ms. Powell-George, you were saying that after you heard all the evidence and you weighed those factors, would you be able to reach a decision of death if that were appropriate? And she says, yes, if that was appropriate. The state didn't ask any other follow-up questions, didn't ask about the death penalty, didn't ask about her thought on punishment of drug users. And I think as your friend on the other side pointed out, certainly alcohol, I think, is a drug and was heavily a part of the case. I personally have a hard time seeing how you could walk away thinking that she wouldn't be favorable to the death penalty in this case. Well, so, again, the prosecutor was in the room and heard those answers and they're not required to believe a lot of your answers and they can discern based on demeanor. It's just not on the transcript. The prosecutor didn't just have a cold transcript. She was in the room. I don't think there's a type of clear and convincing evidence to show, oh, no, there was no basis for concern. And not following up additional questions, that's not clear and convincing evidence of discriminatory intent. And even if the prosecution was wrong about her being hesitant, mistakes can still be a basis if they're reasonable mistakes and if they don't suggest discriminatory intent. And, again, you just can't tell from the record that there's some clear and convincing evidence that she didn't show some type of hesitation for the death penalty or more focus on drug use. And the fact on drug use, alcohol and drug use, I also think it's reasonable for a prosecutor to say, well, that's not really the focus of this case. The focus of this case is more the murder and having something that's a little bit more beside the point being what you need to show to prove his death. That's just not the typical death penalty case. I think she could . . . Is this going to be a position for all of the jurors that even if there's nothing in the record to support the reasons stated by the prosecution, there might have been something intangible that wasn't captured by the record that would justify it anyway? Well, I'm not really suggesting there's nothing in the record that would support this. I'm just saying that she gave what seems like a pretty passionate answer in defense of punishing drug users. And for the death penalty, she just said, yes, if appropriate. And I think that brings us naturally to O.J. who, again, the prosecutor said, oh, like you hesitated. Why did you hesitate? And he said nothing in particular. He didn't say, as other counsel suggested, oh, he was confused and didn't understand the question. The prosecution could have discerned from that some type of hesitation that he wasn't super on board with the death penalty. He said in his juror questionnaire, if you're guilty, you should pay for it. Well, is life without parole paying for it? Is death penalty paying for it? That's just . . . You're pointing out a hesitation. I think the problem for you is that there are other jurors, and I think S.G. is a big problem for you, who clearly hesitated even more, yet were still seated. That was still acceptable for the prosecution. So on S.G., so she showed . . . She talked about how she would need confidence to impose the death penalty. And the judge asked her, well, if you had something like a confession, would that be enough? And she said, yes. And she said she knew if she had, like, eyewitnesses, videotape, or something like that. And as Judge Branch pointed out, there was a confession here. So now with other jurors, you might have unknowns. You might not know what it is that they're concerned with with regard to the death penalty. Is it death itself? It's just a hesitation, because I think you would agree that that really seems to be the only thing that's being articulated for O.J. I mean, S.G., even after she was seated, she said that she didn't think that she could handle this, right? Well, the prosecution, of course, didn't know that at the time. And that was totally after the fact. I'm not sure how that could weigh in on the process. It could weigh into the decision of whether the prosecution was reasonable. The fact that her initial hesitation, which was before the prosecutor at the time, and could have made the strike, it was a real hesitation versus this one for O.J. She was asked about it. Her final hesitation wasn't explored further. I think that's a real problem. Well, so for O.J., again, he said nothing in particular. The prosecutor obviously sent some sort of hesitation, and the prosecutor didn't have an answer of, oh, what do I need for you to vote for death? For S.G., she said, you know, a confession, eyewitnesses. She was asked, you know, would that be enough? She said, oh, yeah, I could, after that hesitation. So it was about a confession or about eyewitnesses? The judge asked about a confession. It was a shrink. He listed certain examples. A confession was one of them. A confession was one of them. Yes. And then when she was repeating over and over again, she did emphasize the eyewitnesses and that sort. But the prosecutor could determine from that, okay, she seems to be pretty on board with the death penalty if she knows that the guy did it. And here, there was a confession. And that's just, I think, quite different from O.J., where the prosecutor doesn't know what he needs. He doesn't have to take a chance on someone when he doesn't know, what do I need to show at the penalty phase or the guilt phase to get this person to vote in favor of death? And then one fact that I think really underscores just the incorrect views on the law and on the facts of the other side is how many of the jurors who they challenge were just ardently opponents of the death penalty. So you have, you know, Juror 16, for example, who says, you know, I'm kind of stunned right now. Why are you hesitant? That could say that she was afraid to impose death. That suggests that she couldn't impose death. And then Juror 93, similar testimony, says, you know, I couldn't do it. Could you listen to the evidence? I'm not sure. Those are quite different from jurors like S.G. who explained what it was that they thought they would need to impose death sentence. And then just getting back to just how important epidefference is in this case, Millerel is an epidefference case. And there the court didn't just stop with some type of pretext or reasons that they didn't find persuasive looking at a cold record. What the court also found in Millerel was this strong history of discrimination that the prosecution was using what the court called trickery, where you would ask trick questions and if a juror gave the wrong answer, you could strike them for cause, even if the answer suggested they would be pro-prosecution. And that was used against many more black jurors than white jurors. They also used something called a Texas shuffle where they could realign the jurors in a way that made black jurors less likely to be picked on the jury and reasons that were just downright quite unpersuasive. And again, that's nothing like what we have here. But Millerel also talks about the statistical significance of the striking patterns. And do you agree that here we have a pretty significant statistical disparity between the number of black jurors that were struck and the number of white jurors? Well, so that's never dispositive. This court has noted that having black jurors on the panel is some evidence coming against discrimination. There were two here. The prosecution struck 17 black jurors, didn't strike five. How many black jurors do you need for a death recommendation at this time in Alabama? You need 10. 10, right? Yes. If you had a certain approach, two would be irrelevant, wouldn't it? I suppose it could be, but again, the ultimate sentencing determination was with the trial judge in this case. It was just a recommendation. And that's not the type of clear and convincing evidence either. Either I wouldn't think, and especially if you were just, you know, just two jurors, you had no wiggle room if you cared so much about the recommendation. And then just on the numbers, the court has affirmed under AEDPA when the prosecution used more strikes against black jurors in Lee. It was every single one of them. King was a comparable little bit higher. That's, again, it's just not the type of evidence that's needed to show clear convincing evidence that when the state court found no discrimination, that it was wrong, that these facts which are presumed correct, which the court isn't deciding whether it thinks based on its used evidence is most persuasive, but whether any fair-minded jurist could agree with that conclusion. And the trial court who presided over the case found these weren't discriminatory reasons. The state court found the same thing. And trial counsel didn't even think that there was any discrimination. And... Although the trial court presumably doesn't think there was discrimination in any case that later comes back on Batson, right? If Batson comes up on Habeas, in one of those cases the trial court at the time didn't think there was discrimination, right? I'm not sure how that moves the needle. Oh, I understand. It's certainly a relevant factor and that's why the standard under AEDPA is so deferential that when it comes to Batson, really what's most important is what happens in the courtroom and the trial judge is in the best position. That's why even on direct appeal without AEDPA, it's only in extreme circumstances where the court will reverse. On Batson grounds, like in Flowers, where Flowers had been tried, I believe, six times before, two of them had been reversed on Batson grounds. All but roughly two black jurors had been struck in all of those trials or at least the ones we had the data for in Flowers. And that's nothing like here where you can look at the record and think, well, maybe, you know, juror OJ wasn't really that hesitant looking at it 15 years later or maybe juror TPG, maybe she really didn't suggest that she cared more about drugs and she cared about the death penalty. That's just not the type of thing that a court is in the best position to decide all these years later and that you can find clear and convincing evidence to rebut the presumption of correctness on a cold record. Can we talk about going back to what the Court of Criminal Appeals did? You know, it listed these reasons for each juror. So many times the list wasn't even complete. For instance, the case of GW, the ACCA listed its reasons, but it didn't include two of the pretextual reasons, including one that acknowledged was questionable for another struck black veneer member. It then analyzed the only race-neutral reason, her opposition to the death penalty, but that wasn't actually raised at the Batson hearing. So was there any basis that the Court of Criminal Appeals had for justifying the strike of GW? And, again, I think this is just an example of the sort of problem that I'm struggling with, with how the Court of Criminal Appeals conducted its analysis and how we're to review that. Well, so, again, just big picture point, under AEDPA, you're looking to see whether, based on the bottom line, is reasonable or not. Checking to see, well, did it check all the right boxes? Did it discuss every particular fact? The ultimate question under 2254-D2 is whether the decision itself was based on an unreasonable determination of fact, whether it was such an important reason that it has to lose AEDPA deference. On GW, it is correct that the prosecution did not list reservations of death penalty initially, but, again, this was two years later, trying to decipher, well, what is the reason for the strike? And if you look at the transcript of this case, with GW, at the time, the prosecution certainly seemed skeptical of whether GW was willing to vote for death. She was asked about a family member who had some issues in the past and asked, would that affect your decision on this case? He said, well, I think so. Could you impose death? I guess. The prosecution asked, well, you're expressing reservations. He agreed. It's not like this is something that the prosecution just, you know. Sure, but it was one of the reasons that the prosecution provided to the court for striking that juror, right? So I believe it was in the response, not the admission. Yes. But the hearing itself. Yes. That does confirm to the prosecution that these are the reasons. Yes. Yes, but the prosecution, they're allowed to make mistakes. Not every mistake is grounds for an inference of racially discriminatory intent. And when you have two years later trying to remember why did you strike this juror, I think when you have a record that bears out that the prosecution at the time seemed to express some concern about that juror, and especially on could you impose a death sentence. And again, getting back to just the basis, is it enough that I still don't think it's unreasonable for the court to affirm the strike of GW on that basis, even if you disagree because you're looking at the decision. Was it racially discriminatory to find that the district court did not clearly err when it accepted that strike? And you could find that they clearly err with any fair support in the record, not that one particular reason was not racially discriminatory. And I'm happy to discuss any further potential jurors, but if not, again, this was a case where no one who was in the courtroom at the time thought that the prosecutor was discriminating on the basis of race. Everyone who had seen the best evidence of whether there was discrimination, the demeanor of the prosecutor, the demeanor of the jurors, none of them thought there was discrimination. This is not the type of case where years later the EdPIRP allows federal courts to come in and vacate convictions. Thank you. Thank you, Your Honor. I think the state this afternoon has presented sort of general arguments about deference, about demeanor, that I think are not responsive to the specific issues in this case. This was really a unique case, and I think the state didn't really respond to the ways in which it's unique. First, we have a state court decision that is explicitly identifying and applying an incorrect legal standard. Then we have a prosecutor that is providing a laundry list of reasons for each juror and then abandoning some of them when they're called that those are not defensible, changing to other reasons. That is a very unique set of facts. And I want to just respond to a few of the specific things that were said. First, Judge Grant, you had asked about mixed motive analysis, and I think under mixed motive analysis, we win in this case. I think that is the analysis Snyder points to. And where you have a mixed motive, where there are some reasons that are shown to be pretextual and maybe another reason that there's less evidence of pretext, that final reason, the prosecution, bears the burden of proving they would have made the strike solely based on that reason. And I think they can't meet that burden here, and I think OJ is a great illustration of that. There are three reasons given for the strike of OJ, two of which apply equally well to white jurors who served, and then all we have left is this pause. And I think under those circumstances, the prosecution cannot bear their burden of showing they would have struck OJ solely based on that race-neutral reason. Why do you think they couldn't? For purposes of argument, let's assume that it was a very big pause, right, and he was really kind of obviously struggling with it, and that's something that the record would not disclose. On that one, why couldn't that have been kind of the real reason? Because I don't think that the cases allow us to kind of do our own completely cold weighing today, right? Yeah, I would agree with that, Your Honor. So how does a mixed-motive analysis necessarily not succeed for him? I think it doesn't succeed particularly when you consider the failure to strike SG, who clearly expressed strong hesitation about imposing the death penalty. And where all you have with OJ is a pause, and with SG we have a record of very strong objections. I mean, she even came forward after she was selected for the jury and said, I can't serve, this is too much for me. So I think that to suggest that there was reason to be confident that she could serve, she actually never said one time, I can follow the law. And then we have her not being struck, but OJ being struck just based on this pause, I think that is a situation where the prosecution just absolutely cannot prove they would have made the strike just based on that pause where they're not striking SG. But does that mean that they couldn't have struck anyone who didn't come forward after they were selected and say, whoa, I don't think I can do this, right? If you say that it has to meet that standard in order to be enough, then I think that probably ties the prosecution's hands a little bit too much. No. I think that what she said before and during voir dire would be enough for the prosecution to know she was very hesitant about imposing the death penalty. There were reasons that had been identified that they felt confident that, you know, they would be able to satisfy those reasons for her. Whereas if you just have kind of a vague hesitation, you know, I'm not saying it's a de novo matter. That would be my view of it. But I think it's a little bit harder when we're looking at whether, you know, whether it would be at all reasonable to think that that could have been what happened. I mean, I'm sorry, SG also stood up when asked who is so opposed to the death penalty that they can't follow the law, whereas OJ did not. And so I think that's very significant when you're saying, like, who's hesitation here, was it reasonable for the prosecution to be concerned about? And I think the big difference between SG and OJ is also the race. And the fact that they are more concerned about OJ with a pause than they are about SG, I think is very strong evidence of racial discrimination in this case. I wanted to also touch on your question just about Ms. Rich and when she was in the office. She had been in the office for 15 years prior to this trial, so she was in the office at the time of some of the prior Batson reversals. And she was elected DA shortly before the Batson hearing, so she became DA right after that. So the actual trial and the voir dire took place during the previous DA's tenure? That's correct, Your Honor. And I think it's also significant that we have not just a pattern of strikes in this case, but we have four other death penalty cases tried around the same time, where we also have the same prosecutor excluding the vast majority of black jurors. A couple other quick points. Just my friend on the other side mentioned the Lee case. That is the only case I've seen that have a similar number of strikes to this case. But Lee is a majority black county from Dallas County in Alabama, and there was still a majority black jury in that case. So I think the facts there are very different from the facts here. About GW, I mean, I think GW, as you asked about Judge Kidd, is a really strong indication of why this shifting of reasons matters, and it's not something that the appellate court could just ignore under clearly established precedent. I think when the prosecutor gives a reason for the strike, that reason is then not defensible, and then they have to shift to a different reason. That is strong evidence of discrimination, and that's consistent with how we evaluate credibility in everyday life. If you're a parent, you find a broken lamp, you go ask your kid what happened. They say it was the dog. You check. The dog's been out in the backyard the whole time. You go back to your kid. They say it's the cat. You're just not going to find that explanation very credible. And I think the same thing applies here, where the prosecution is changing their reasons for their strikes. What about the argument that this was because it wasn't a Batson hearing at the time, right, that the prosecutor also is looking back at a cold record and kind of trying to piece together what likely was the issue? I'm sure that all of these prosecutors had, you know, done cases in between, and for that reason, couldn't they kind of be looking at a cold record and trying to remember? I think they could, Your Honor, and I think if they made one or two mistakes, that would be one thing. Here they made mistake after mistake about easily verifiable facts about these jurors. I mean, it was not just AP's child's father being on death row. It was CO and SW's health problems, MM's view on the burden of proof, BT's feelings about his uncle's criminal history, OJ and CO's views on the death penalty, and CC's area of study. So they're making erroneous statements about numerous black jurors, and I think when you consider the record as a whole, that is strong evidence of discrimination. If you were, and I'm going to keep pushing on this, but if you were pressed for time or just really wanted to know if Batson was an issue and so you were going to prioritize doing other things, wouldn't you be more likely to just kind of look and see what you found, whereas if you really were trying to obscure racially motivated strikes, you probably would have made sure that your reasons were buttoned up a little tighter. Am I wrong about that? I mean, I suppose that's possible, but I think here when you look at the reasons that were given, the extensive evidence that white jurors who served had similar characteristics, that many of the rationales were not true, that they changed their rationales, the pattern of striking of black jurors in this case and other cases, the long history of discrimination by the office. I think the only reasonable conclusion here is that these strikes were the product of racial discrimination. And so I see I'm almost out of time. If there are any further questions, we would ask this Court to reverse the District Court's denial of habeas relief. Thank you both, and we have your case under advisement.